WIGGINTON, Judge.
Plaintiff has appealed a judgment of conviction and sentence based upon a jury verdict finding him guilty of second degree murder. By his sole point on appeal he contends that the trial court erred in admitting into evidence over his objection an alleged dying declaration made by the victim shortly prior to his death.
The deceased was found in the weeds beside a country road early on a Sunday morning with his throat slashed from ear to ear and his trachea completely severed above his voice box. He had apparently been lying in this position for the greater part of the night and had lost a considerable amount of blood. Although when he attempted to talk his speech was gurgling and somewhat incoherent, he was nevertheless heard to say that the person who cut him was his brother, the appellant herein. *72 He was still alive when picked up by an ambulance and taken to a hospital but was completely unconscious upon arrival. The doctor who examined him testified that upon his initial observation of the deceased, there was barely a spark of life present; that all vital signs had essentially ceased and the patient was in profound shock. The deceased at that time had no blood pressure nor pulse and his respiration had practically stopped. The deceased was pronounced dead at 9:20 a. m. on the morning he was found in this critical condition, which was within two or three hours after he made the declaration accusing appellant of having inflicted the fatal wounds upon him. The doctor testified that from his experience he had found that people with wounds as serious as those inflicted upon the deceased in this case had a sort of sixth sense of disaster and had a feeling that they were going to die.
At no time after the deceased was found lying beside the road in such a critical condition did he audibly state that he fully appreciated the seriousness of his wounds or that he felt that death was inevitable. It is appellant’s position that, because of the absence of any evidence tending to establish the foregoing factors, no proper predicate was laid which would justify admission into evidence of the accusatory declaration made by the decedent shortly prior to his death.
It is the established law of this state that before a dying declaration may be admitted in evidence, there must be proof from which the jury could reasonably conclude that the declarant entertained no hope of recovery and realized that death was imminent. This is a mixed question of law and fact to be decided by the presiding judge before permitting the introduction of a dying declaration.[1] It has been held, however, that the apprehension by the declarant that he entertains no hope of recovery and feels that death is imminent need not necessarily be established by statements of the declarant but may be proved by the facts and circumstances existing at the time the declaration is made. In this connection our Supreme Court in Johnson v. State [2] said:
“Whether a sufficient and proper predicate has been laid for the admission in evidence of a dying declaration is a primary matter for determination by the trial court, being a mixed question of law and fact, and the judgment of the trial court thereon is entitled to great weight; every presumption being in favor of its correctness. Such ruling is subject to appellate review, but it will not be disturbed unless it clearly appears to be erroneous. That declarant, at the time of his dying declaration, entertained no hope of recovery, and that he knew and appreciated his condition as being that of an approach to certain and imminent death may be gathered from proof of the surrounding circumstances, as well as from all the circumstances of the case. It is not indispensable that deceased declare totidem verbis that he entertains no hope whatever of recovery, and realizes that death is imminent and unavoidable, where the understood nature of his injury is such as to establish beyond all reasonable doubt that declar-ant must have known and believed he was talking as a man on the threshold of mortal dissolution. Sealey v. State, 89 Fla. 439, 105 So. 137; Richardson v. State, 80 Fla. 634, 86 So. 619; Gardner v. State, 55 Fla. 25, 45 So. 1028; Bennett v. State, 66 Fla. 369, 63 So. 842; Folks v. State, 85 Fla. 238, 95 So. 619; Copeland v. State, 58 Fla. 26, 50 So. 621; Malone v. State, 72 Fla. 28, 72 So. 415.”
Examining the record in the case before us, it clearly appears that before accusing appellant of having been the one who inflicted the mortal wounds upon him the declarant had been lying beside a road *73 for an undetermined number of hours with a deep slash in his throat. He had almost bled to death before being found early in the morning by passerby. He appeared to be sufficiently rational to know what he was saying just prior to being placed in an ambulance and taken to the hospital. It is hardly conceivable that any person in that condition would not have known that recovery was unlikely and that death was imminent. This was the testimony of the medical doctor who examined the deceased at the hospital, which professional judgment accords with logic and reason.
It is our view that the facts and circumstances of this case were such as to create a jury issue on the question of whether the deceased knew that recovery was unlikely and that death was imminent at the time he accused appellant of being the one responsible for his mortal wounds. We therefore conclude that the trial court did not err in submitting this issue to the jury, and the judgment appealed is therefore affirmed.
CARROLL, DONALD K., Acting C. J., and RAWLS, J., concur.

. Simmons v. State, 160 Fla. 676, 36 So.2d 262.

. Johnson v. State, 113 Fla. 461, 152 So. 176, 178.