439 So.2d 840 (1983)
Robert Alan TEFFETELLER, Appellant,
v.
STATE of Florida, Appellee.
No. 60337.
Supreme Court of Florida.
August 25, 1983.
Rehearing Denied November 1, 1983.
*842 James B. Gibson, Public Defender, and Michael S. Becker and Christopher S. Quarles, Asst. Public Defenders, Seventh Judicial Circuit, Daytona Beach, for appellant.
Jim Smith, Atty. Gen. and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Robert Teffeteller appeals his conviction for the first-degree murder of Peyton Moore and his sentence of death. He also appeals his sentence for the charge of using a firearm in the commission of a felony, for which he received a concurrent term of three years. We have jurisdiction of this cause pursuant to article V, section 3(b)(1), Florida Constitution. Finding no merit to any of appellant's challenges to his conviction, we affirm the conviction. We also affirm the sentence for the firearms offense. However, we reverse the sentence of death imposed after a jury recommendation of death because of improper and prejudicial comments by the prosecutor during the penalty phase and remand for a new sentencing hearing before a new jury.
In January 1979, Peyton Moore was walking back to his home in Ormond Beach after jogging on the beach. He was stopped by appellant and George Overton in a car driven by appellant. Overton asked for Moore's wallet. Moore told the men he had no money. A shotgun was then pointed out the passenger side window at Moore and fired. The car sped away. Moore sustained massive abdominal damage due to the shotgun blast but remained conscious and coherent for about three hours. He was given emergency aid both at the scene and at the hospital. At both locations, he gave a statement to the police describing what happened. Moore later died on the operating table. Eventually, appellant was caught after a series of travels around the country with Overton and others and indicted for the murder. Trial proceeded but on the second day the court declared a mistrial due to improper references, prompted by questions from the court to a state witness, relating to the murder of Overton by appellant in Texas. The trial judge then recused himself. At the new trial, appellant was convicted and sentenced to death.
Appellant raises a total of fourteen issues on this appeal. We will discuss six; the others have been carefully considered by this Court and held to be meritless.
Appellant first argues that he was denied due process when the trial court overruled his objection and denied his motion for new trial which was based upon the state's improper bolstering of a witness's testimony through the introduction of a prior *843 consistent statement. The testimony of Donald Poteet was both lengthy and incriminating to the appellant. Among other things, Poteet testified that appellant pointed out the street where he had shot Moore. During the testimony, the prosecutor asked, "And did you tell Lieutenant Blankenship basically the same thing that you have testified here today?" Poteet answered, "Yes, sir." Appellant's timely objection was overruled. Appellant argues that a prior consistent statement may not be introduced to shore up a witness's testimony unless and until an effort is made to impeach his testimony. Van Gallon v. State, 50 So.2d 882 (Fla. 1951); Trainer v. State, 346 So.2d 1081 (Fla. 1st DCA), cert. denied, 352 So.2d 175 (Fla. 1977). While this is a correct statement of the law, it lacks applicability to the instant set of facts. The trial court found that the question was designed to tie Poteet's testimony in "time-wise" with prior testimony and to locate it in perspective; the judge described it as "making an envelope." Additionally, the subsequent testimony of Poteet revealed a necessity to identify and localize the statement in light of other testimony that appellant had later instructed Poteet and another confident to change their stories and to claim that the now-deceased Overton was the triggerman.
Even if the trial court's ruling were error, we find that it was harmless. "A judgment will not be reversed unless the error was prejudicial to the substantial rights of the appellant." Palmes v. State, 397 So.2d 648, 653 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). "In determining whether an erroneous ruling below caused harm to the substantial rights of the defendant, an appellate court ... inquires generally whether, but for the erroneous ruling, it is likely that the result below would have been different." 397 So.2d at 653-54. Almost identical testimony to Donny Poteet's was elicited from witnesses Kuykendall and Danny Poteet. In fact, these two individuals' statements were more incriminating and more damaging to appellant than the statement objected to. The result below clearly would not have been any different even had Donny Poteet not testified at all. We thus hold that the error, if any, was harmless.
Appellant's second claim is that the trial court erred in finding certain hearsay evidence admissible under the dying declaration exception. The trial court allowed into evidence Peyton Moore's statements to Officer Morgan which described the nature of the robbery encounter, and in particular a description of the passenger of the car. Earlier, Morgan had testified that Moore had commented, "Oh God, I'm going." In response to that comment, attending doctors had consoled Moore and told him he should not worry. He died soon thereafter. Appellant argues that there was insufficient testimony to establish that Moore actually believed and was aware of his dying condition and thus a sufficient predicate was not laid. We disagree.
It is not necessary that the evidence ... should consist of express utterances of the deceased to the effect that he knew he was going to die, or could not live, or would never recover. It may be gathered from any circumstance or from all the circumstances of the case, and is sufficient if the evidence ... satisfies the judge that the deceased knew and appreciated his condition as being that of an approach to certain and immediate death.
Lester v. State, 37 Fla. 382, 385, 20 So. 232, 233 (1896). See also Covington v. State, 145 Fla. 680, 200 So. 531 (1941); Johnson v. State, 113 Fla. 461, 152 So. 176 (1934); Mills v. State, 264 So.2d 71 (Fla. 1st DCA 1972). In the case sub judice, Moore's initial cry that he was "going," coupled with the statements from attending Doctors Knight, Schwartz, Doig and Marino that terminal patients on the "final glidepath" are aware of their impending death and that the doctors believed, given the nature of the wound and Moore's lucidity, that Moore knew he was dying, are sufficient predicates to allow the introduction of the dying declaration of Moore. Whether a proper and sufficient predicate has been laid for the admission in evidence of a dying declaration is a mixed question of law and fact and will not be disturbed unless clearly *844 erroneous. Johnson v. State. We cannot say that it was clearly erroneous for the trial court to admit the dying declaration in the instant case.
Appellant next argues that the trial court erred in failing to instruct the jury on the essential elements of the underlying felony. He argues that since the evidence showed, at most, felony murder, the court inadequately instructed on the underlying felony of attempted robbery. In particular, he claims that the instructions given were deficient in that they omitted aid in defining "attempt" and "intent to permanently deprive another of property." We believe that appellant's argument fails because his initial premise is invalid, thus we do not need to address the adequacy of the instruction.[1] We find that the evidence shows that the conviction can be sustained not solely under a felony murder theory but also under a premeditation theory. The latter being valid, the alleged inadequacies in the underlying felony instructions become moot. There is evidence in the record that could have been believed by the jury that proves beyond a reasonable doubt that appellant was indeed the triggerman in this murder and that appellant acted from a premeditated design to effect the death of Peyton Moore. Of significance were appellant's admissions to the Poteet brothers and Richard Kuykendall that he had murdered the victim and the later attempts by the appellant to have these three individuals change their story and blame the murder on the deceased Overton. Circumstantial evidence is admissible to establish premeditation. See Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982); Spinkellink v. State, 313 So.2d 666 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); Larry v. State, 104 So.2d 352 (Fla. 1958). Under the facts of the present case, we believe there is substantial, competent evidence to uphold appellant's conviction under a premeditation theory. That being so, any error in the instructions on the underlying felony of attempted robbery becomes harmless. Knight v. State, 394 So.2d 997 (Fla. 1981); Frazier v. State, 107 So.2d 16 (Fla. 1958).
We thus affirm appellant's conviction of murder in the first-degree. Additionally, even though the issue was not raised on this appeal, we have studied the record and found no error in appellant's conviction for the use of a firearm in the commission of a felony. That conviction likewise is upheld.
Appellant's remaining issues relate to the sentences he received for these crimes. He first argues that the trial court erred during the penalty phase in denying his motion for a cautionary instruction or a mistrial based upon improper and prejudicial comments by the prosecutor. We agree. During his argument to the jury, the prosecutor urged the jury to recommend that appellant receive the death penalty or else he would be paroled in twenty-five years and would kill again. Redundantly, the prosecutor argued:
What you have to be concerned with is this, this Defendant, if you folks recommend mercy and that is the sentence that is imposed, will be eligible for parole in twenty-five years. He's 27 now. He's 52 when he gets out or when he is considered for parole. And you better believe that he will be considered for parole, given the condition of the parole releases in this State.
You look at that. This Defendant released on parole. What do you think is going to happen? He's going to kill again. You better believe he's going to kill again.
He will go after Donny Poteet. He will go after Rick Kuykendall. Does he have to kill again before you think it's the proper case? I don't think so.

*845 You must know that this Defendant will kill again and when he does it will be too late.
* * * * * *
[T]his Defendant will kill again if he is given a chance. I don't see how you can find otherwise.
Don't give him that chance. Don't have to realize after he is paroled and after he kills someone else, perhaps Donald Poteet, perhaps Rick Kuykendall or who knows who he will go after.
* * * * * *
Know that your determination will have a deterring effect on this Defendant and know that it will keep him from being able to kill again. Don't let it happen. Don't let it happen. Don't let Robert Teffeteller kill again.
The trial court denied the motion for mistrial and refused to give a cautionary instruction.
Comments of counsel during the course of a trial are controllable in the discretion of the trial court, and an appellate court will not overturn the exercise of such discretion unless a clear abuse has been made to appear. Paramore v. State, 229 So.2d 855 (Fla. 1969), vacated, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972). While "[i]t is extremely difficult to definitely state at what point the line should be drawn between what is doubtfully permissible argument and what is clearly wrong," 229 So.2d at 860, in the instant case the line was clearly drawn too far. "We think that in a case of this kind the only safe rule appears to be that unless this court can determine from the record that the conduct or improper remarks of the prosecutor did not prejudice the accused the ... [sentence] must be reversed." Pait v. State, 112 So.2d 380, 385-86 (Fla. 1959). We cannot determine that the needless and inflammatory comments by the prosecutor did not substantially contribute to the jury's advisory recommendation of death during the sentencing phase. We hold that it was reversible error for the trial court to deny appellant's motion for a mistrial or for a cautionary instruction.
This is yet another example of inexcusable prosecutorial overkill, resulting in a sentencing retrial before a jury. The material and human resources of the state are thus squandered. If this were a matter of first impression in this jurisdiction, there might arguably be some justification for counsel's indulging in such elocution, but this Court has previously condemned this type of conduct. The failure to heed what the Court has said before in this area thus necessitates a sentencing retrial. The remarks of the prosecutor were patently and obviously made for the express purpose of influencing the jury to recommend the death penalty. The intended message to the jury was clear: unless the jury recommended the death penalty, the defendant, in due course, will be released from prison and will kill again, this time two of the witnesses who testified against him, and maybe others. There is no place in our system of jurisprudence for this argument. See Grant v. State, 194 So.2d 612 (Fla. 1967); Singer v. State, 109 So.2d 7 (Fla. 1959); Williams v. State, 68 So.2d 583 (Fla. 1953); Stewart v. State, 51 So.2d 494 (Fla. 1951); Sims v. State, 371 So.2d 211 (Fla. 3d DCA 1979).[2] We thus reverse the sentence of death for first-degree murder and remand back to the trial court to hold a new sentencing trial before a jury.
Appellant next argues that the trial court erred in imposing the death sentence in that it incorrectly found certain aggravating factors and failed to find certain mitigating *846 circumstances. Since we have remanded this cause to the trial court for a new sentencing proceeding, this issue may well arise again, and we therefore address it.
In its written findings of fact, the trial court found in aggravation that the appellant was serving a sentence for a Tennessee forgery conviction at the time of the murder; that the murder was committed during the course of an attempted robbery; and that the crime was especially heinous, atrocious and cruel. The court found nothing in mitigation; specifically, the court found that appellant had a significant history of criminal activity and his age of twenty-five was not a mitigating factor.
The trial court correctly found that appellant was under sentence of imprisonment due to the Tennessee forgery conviction and appellant has not disputed that aggravating circumstance. He does dispute the other two factors. Since the murder was committed during the course of an attempted robbery, appellant claims that this creates a presumption for the imposition of the death penalty for all persons who commit first-degree felony murder in contrast to those who murder by premeditated design. This argument is without merit and has been disposed of already by this Court in White v. State, 403 So.2d 331 (Fla. 1981). In any event, with sufficient evidence to support a conviction for premeditated murder in the instant case, the argument becomes academic. Finally, appellant disputes the trial court's findings that the murder was heinous, atrocious and cruel. We agree with appellant that this killing does not fall within that category of murders which the legislature has denominated as especially heinous, atrocious and cruel. § 921.141(5)(h), Fla. Stat. (1979). As we stated in State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974), "[w]hat is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim." The criminal act that ultimately caused death was a single sudden shot from a shotgun. The fact that the victim lived for a couple of hours in undoubted pain and knew that he wasfacing imminent death, horrible as this prospect may have been, does not set this senseless murder apart from the norm of capital felonies.
Appellant argues that the trial court erred by not finding mitigating factors present. More specifically, appellant claims that he lacked a significant history of prior criminal activity. He claims that the dispositive word is "significant" and that one conviction for forgery and one prison escape do not rise to the level envisioned by the legislature as significant. The trial court noted in his findings on this issue that:
The Court finds the Defendant does have a significant history of criminal activity. He was convicted of the felony of forgery. Secondly, he was an escapee at the time of the offense. The Court did not take into consideration either the Texas murder or the Florida aggravated assault. Both of these offenses occurred after January 14, 1979. Additionally, the Court did not allow evidence of these later two offenses to go to the jury during the sentencing phase. The Court on one hand fears that events occurring after the offense may not be legally relevant. On the other hand the Court feels that these subsequent events are in fact relevant to the Defendant's rehabilitation potential and should be considered by the Court and jury. The benefit of the doubt was given to the Defendant and these events were not considered by the Court, nor submitted to the jury.
We make two comments on the trial court's findings relative to this mitigating factor. First, it is within the trial court's province to decide whether a mitigating circumstance is proven and the weight to be given it. Riley v. State, 413 So.2d 1173 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982); Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, *847 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982). We cannot say that it was error for the trial court to find a forgery conviction and a prison escape to be a significant history of criminal activity. Second, we note that the trial court gave the benefit of the "doubt" to appellant by not considering appellant's Texas conviction for the murder of George Overton and appellant's Florida conviction for an aggravated assault which had occurred in the Volusia County jail while appellant was awaiting the instant trial. We think the law is clear on this point and that there need be no doubt. We have held that "in determining the existence or absence of the mitigating circumstance of no significant prior criminal activity, `prior' means prior to the sentencing of the defendant and does not mean prior to the commission of the murder for which he is being sentenced." Ruffin v. State, 397 So.2d 277, 283 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981). At resentencing, the trial court may thus consider the Texas murder conviction and the Florida aggravated assault conviction.
Appellant further argues that the trial court should have found as mitigation that appellant was only an accomplice to the triggerman Overton. Appellant's admissions to the Poteets and Kuykendall that he himself shot the victim belie this argument.
Appellant's final issue for review relates to the sentence for the firearms offense. He claims that according to State v. Hegstrom, 401 So.2d 1343 (Fla. 1981), he may be convicted of both murder and the firearms offense but that separate sentences are proscribed and hence the three year sentence for the firearms charge must be vacated. We disagree. Hegstrom was a felony-murder case; the instant murder conviction, as we have held above, may properly be based on premeditation. As such, the firearms offense is not a lesser-included offense of premeditated murder. See Borges v. State, 415 So.2d 1265 (Fla. 1982). Separate sentences are thus not proscribed.
In summary, Robert A. Teffeteller's conviction of murder in the first-degree is affirmed. His sentence of three years for the use of a firearm in the commission of a felony is also upheld. Appellant's death sentence, however, is vacated and remanded to the trial court for a new sentencing proceeding with a jury.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice, concurring in part and dissenting in part.
I concur in the judgment affirming appellant's conviction but dissent to the order vacating the death sentence and awarding a new sentencing trial. The question of whether the prosecutor's comments in closing argument at the sentencing proceeding were improper, and the separate question of whether they were prejudicial, must be determined in the context of the facts and circumstances of the crimes as shown by the evidence. Gibson v. State, 351 So.2d 948 (Fla. 1977), cert. denied, 435 U.S. 1004, 98 S.Ct. 1660, 56 L.Ed.2d 93 (1978). If the facts shown by the evidence are shocking, prosecutorial comments thereon are likely to be somewhat intense and such fair comment is permissible. Darden v. State, 329 So.2d 287 (Fla. 1976), cert. dismissed, 430 U.S. 704, 97 S.Ct. 1671, 51 L.Ed.2d 751 (1977).
As the majority opinion recognizes, the cases cited therein pertaining to improper inflammatory argument were decided under the old capital felony sentencing proceedings. Under prior law in Florida, a conviction of a capital crime resulted in an automatic sentence of death unless the jury included with its verdict of guilt a recommendation of mercy. Such a recommendation of mercy was binding on the trial judge and resulted in a sentence of life imprisonment. The final arguments of counsel were directed both to the matter of guilt or innocence and to the matter of death or life *848 imprisonment. Thus excessive comments by the prosecutor directed to one of the two matters to be determined by the jury were capable of improperly influencing the jury on the other matter. The result of improper comment was therefore often a finding of prejudice.
Under the current capital felony sentencing law, the trial proceeds in two stages, with a guilt phase followed by a sentencing proceeding. Thus the jury does not hear evidence and argument directed specifically at the question of sentencing until the defendant's guilt of a capital felony has already been determined. There is thus no danger that a prosecutor's inflammatory remarks on the question of sentence will improperly influence the jury on the question of guilt or innocence.
Another major difference between the old and the new sentencing procedures is of course that under current law the jury's sentencing determination is advisory only. The trial judge imposes the sentence. Part of the judge's function is to guard against any improper emotional impact on the determination of the sentence and to assure that the sentence imposed is based upon objective evaluation of the crime and the offender.
Even under the old sentencing procedure, prosecutorial reference to the possibility of parole with a life sentence was held not prejudicial because the institution of parole is a matter of such common knowledge. Paramore v. State, 229 So.2d 855 (Fla. 1969), vacated on other grounds, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972). There was a presumption that the trial judge was capable of controlling arguments of counsel and would keep them within proper bounds. Id.
Under the current sentencing law, we have rejected claims of improper comment at the sentencing phase where the comments did not appear to have prejudicially affected the final sentencing determination by the judge. Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).
Although the likelihood that an offender will commit violent crimes in the future is not a statutory aggravating circumstance, we have recognized that the statutory circumstances, examined in their entirety, seem to point to such propensity as a relevant matter in the sentencing determination.
[W]e believe the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely must be a valid consideration for the jury and the judge. It is a matter that can contribute to decisions as to sentence which will lead to uniform treatment... .
Elledge v. State, 346 So.2d 998, 1001 (Fla. 1977).
Because I believe that the prosecutorial comments in this case were not improper, and that if they did exceed the bounds of propriety they had no prejudicial impact on the final sentencing determination, I dissent from the judgment granting a new sentencing trial.
NOTES
[1] We note that this Court has previously held that instructions on the elements of the underlying felony in a felony murder need not be as particularized as the instructions required when the felony is the primary charge. Vasil v. State, 374 So.2d 465 (Fla. 1979), cert. denied, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980).
[2] We realize that the cited cases antedate the adoption of Florida's tripartite capital sentencing procedure where the trial jury, the trial judge, and this Court are charged with the responsibility of independently weighing the evidence in aggravation and mitigation to determine whether the imposition of the death sentence is appropriate. Although a jury's sentencing recommendation is only advisory, it is an integral part of the death sentencing process and cannot properly be ignored. Where the earlier cases mandated a reversal of the conviction because of improper prosecutorial comments, that was within a framework of the older statute; our new procedure merely requires a reversal of the sentence and a remand for a new sentencing trial only.