714 So.2d 384 (1998)
Perry Omar BUCKNER, Appellant,
v.
STATE of Florida, Appellee.
No. 89001.
Supreme Court of Florida.
April 16, 1998.
Rehearing Denied June 11, 1998.
*386 James B. Gibson, Public Defender, and Christopher S. Quarles, Assistant Public Defender, Chief, Capital Appeals, Seventh Judicial Circuit, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Perry Omar Buckner appeals his convictions of shooting into an occupied conveyance (count I) and first-degree murder (count II) and respective sentences, including his sentence of death for the first-degree murder conviction. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm his convictions on both counts and sentence for count I, but reverse his sentence of death on count II and remand this cause for imposition of a life sentence without possibility of parole.
The following evidence was presented at trial. Buckner, who was eighteen years of age at the time of these crimes, and a number of other individuals went to a bar together. Buckner's off-and-on girlfriend, Latarcia Hampton (Tasha), arrived separately. Tasha was seen dancing that night with Thaddeus Richardson (the victim), and Tasha and Buckner were seen arguing.[1]
At the time the bar closed, the victim was sitting outside in his vehicle. Witnesses who spoke to the victim just before he was murdered stated that he was in a good mood. Buckner was seen exiting the bar and walking quickly over to the victim's vehicle. The two exchanged a few words and were seen "tussling" while the victim was still in the car. At this point, Buckner shot the victim twice and then walked away. The victim exited the vehicle and yelled "Oh my God, somebody help me." Buckner walked back to the victim and shot him three more times. One witness, Garlinda Lewis, stated that *387 Buckner told the victim just before firing the last three shots: "Mother fucker, you ain't had enough?"[2]
Medical testimony reflected that the victim had been shot five times: two wounds to the upper neck area; one to the right chest; one to the abdomen, and one in the back of the neck from a shot fired from only a few inches away. Death was caused by internal hemorrhaging, and the victim could have remained conscious for several minutes before he died. The murder weapon was never recovered.
Buckner testified in his defense that, as he was walking away from the bar, the victim's car began to back up; that he bumped on the car to let the victim know he was behind it; and that the victim shouted an obscenity at him when he tried to explain why he hit the car. He further contended that the victim then reached down for a gun and that, as Buckner rushed the car, the gun went off. The victim got out of the car still holding the gun and in the struggle that then occurred, it went off twice more. Buckner managed to get the gun and when the victim continued to attack him, Buckner fired three times, dropped the gun, and ran. He stated that the other witnesses were lying about what occurred.
Buckner was convicted as charged.
In the penalty phase proceeding, the State introduced testimony from the victim's family regarding the personality of the victim. The defense introduced evidence in mitigation regarding Buckner's troubled childhood, his low IQ (88) and learning disabilities, his age (actual, 18; mental, 14), and his ability to adjust to prison.
The jury recommended death by a vote of seven to five. The judge followed this recommendation, finding two factors in aggravation (heinous, atrocious, or cruel (HAC), and cold, calculated, and premeditated (CCP)) and four factors in mitigation to which he gave slight weight.[3]
In this appeal, Buckner raises seven issues, claiming that (1) the evidence is insufficient to support a conviction of first-degree murder; (2) Buckner was involuntarily absent from portions of the proceeding and inappropriately shackled; (3) the death sentence is inappropriate in this case; (4) the judge failed to engage in an independent weighing process; (5) extrajudicial evidence created undue sympathy, which warranted a mistrial; (6) the trial judge improperly excused three prospective jurors; and (7) a death sentence based on a recommendation by a bare majority of the jury is unconstitutional. The first two issues and the fifth issue address the guilt phase of Buckner's trial; the other four address his penalty phase.

Guilt Phase
In his first guilt phase issue, Bucker asserts that the evidence presented in this case is insufficient to support a conviction of first-degree murder. He contends that many of the witnesses who testified were not credible; inconsistencies were present in much of the testimony; and even the trial judge recognized that the issue of premeditation in this case constituted an "extremely close call." He contends there is no credible evidence to establish the premeditation necessary for a first-degree murder conviction. We disagree.
Premeditation need only exist for such time as will allow the accused to be conscious of the nature of the act the accused is about to commit and the probable result of the act. Coolen v. State, 696 So.2d 738 (Fla. 1997); Asay v. State, 580 So.2d 610 (Fla. *388 1991); Wilson v. State, 493 So.2d 1019 (Fla. 1986). In ruling on a motion for acquittal, the trial judge must determine if competent evidence from which the jury could infer guilt to the exclusion of all other inferences is present. State v. Law, 559 So.2d 187 (Fla. 1989). If so, that view of the evidence must be taken in the light most favorable to the State. Id. at 189. Evidence from which premeditation may be inferred includes such things as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. Jackson v. State, 575 So.2d 181 (Fla.1991).
Buckner acknowledges that the victim provided at least some provocation by dancing with Tasha in front of Buckner's friends on the night of the murder, that Buckner initiated the confrontation by approaching the victim's car window, that Buckner and victim "tussled" while the victim was still in the car, and that two shots were fired while the victim was still in the car. Moreover, the testimony of numerous witnesses established that, after the first two shots, Buckner walked away from the victim's vehicle into the crowd, and, after the victim got out of his vehicle and pleaded for help, Buckner walked back to the victim and shot him three more times. Buckner then left the scene and disposed of the gun. Even discounting inconsistencies in the testimony of witnesses and statements allegedly made by Buckner, it is clear that the last three shots were not fired during any struggle and were fired after Buckner had time to reflect on the consequences of his actions. We find that the evidence was sufficient to support, at a minimum, that the last three shots were premeditated.
Next, Buckner argues that he was involuntarily absent from bench conferences and was unable to view a critical videotape because he was shackled. Prior to the exercise of any peremptory challenges, defense counsel explained to Buckner that he had a constitutional right to be present at the bench conferences. However, because Buckner was shackled, counsel advised Buckner to waive the right to be present at the bench conferences to avoid having the jury see him in shackles. The court placed on the record that defense counsel "had ample opportunity in each break in the discussion to consult with the defendant, and that the defendant agrees to that procedure, and in fact, that is what's been taking place now." Defense counsel agreed with that statement. At the final bench conference during jury selection, the State asked that the record reflect that "counsel has had an opportunity to discuss these challenges with the defendant during the break, and he's satisfied with the procedure." Again, defense counsel agreed.
Buckner contends that his failure to be present at the bench conferences in which peremptory challenges were made violated his rights under Coney v. State, 653 So.2d 1009 (Fla.1995). Although the criminal rule on which Coney was premised has since been amended, Buckner states that he falls within the Coney "window," thereby making Coney applicable to his case. Once a determination is made that Coney applies, the question becomes whether Buckner properly waived his right to be present at the bench. Under the circumstances of this case, we conclude that he did so. Buckner was advised by counsel of his right to be present; he stated "Yes" when asked if it would be all right for counsel to leave him at counsel table; counsel had ample opportunity in each break in the discussion to consult with Buckner; and Buckner's counsel stated on the record that Buckner was satisfied with the procedure.
We summarily reject the assertion that Buckner was deprived of his right to watch the videotape due to the shackling because that issue was not properly preserved for review. Finney v. State, 660 So.2d 674, 683 (Fla.1995) (counsel must object to shackling and request inquiry into the necessity of shackling to preserve issue for review), cert. denied, 516 U.S. 1096, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996).
In his final guilt phase argument, Buckner asserts that extrajudicial evidence created undue sympathy which warranted a mistrial. During a break in the guilt phase, a juror told the bailiff that she saw spectators holding *389 up photographs. An investigation revealed that one spectator held up a collage of photographs of the victim; several rows back, family members of the victim held up two eight-by-ten photographs of the victim. Apparently, none of the jurors saw the eight-by-ten photos, but two of the jurors saw the collage of small photos. Of the two jurors, one stated she thought it was inappropriate that the family held up photographs and that the incident would not influence her in any way; the other juror stated that she saw the photographs but refused to look at them and that the incident would not influence her decision.
After this incident, Buckner moved for a mistrial, arguing that this incident exposed the jury to a blatant appeal for sympathy and consequently deprived Buckner of a fair trial. The trial judge denied the motion.
Under certain circumstances, prejudicial exhibition of emotion may deprive a defendant of a fair trial. Woods v. Dugger, 923 F.2d 1454 (11th Cir.1991) (where prejudicial exhibition "extreme," new trial warranted). Moreover, it is inappropriate for a judge to inquire into the emotions, mental processes, or mistaken beliefs of jurors. State v. Hamilton, 574 So.2d 124 (Fla.1991). However, a judge may objectively look to the extrinsic factual matters disclosed to the jury and then determine whether there was a reasonable possibility that the breach was prejudicial to the defendant. Id. at 129. In this case, a few of the jurors saw the photographs for a brief moment only and even then, saw them only from a distance; the photographs consisted of nothing more than the victim pictured with other individuals; and none of the jurors who saw the photographs could identify who was depicted in the photographs. On these facts, there is no reasonable possibility that the jury's brief exposure to the photographs may have changed the outcome of the proceeding. See, e.g., Burns v. State, 609 So.2d 600 (Fla.1992) (widow crying three times in courtroom insufficient to prejudice jury). Consequently, we find this claim to be without merit.

Penalty Phase
In his first penalty phase issue, Buckner asserts that death is inappropriate in this case because, contrary to the trial court's findings, this murder was neither CCP nor HAC and the evidence in mitigation outweighs any factors in aggravation. Under Jackson v. State, 648 So.2d 85, 89 (Fla.1994), four factors must be established to prove CCP: (1) the killing was the product of cool and calm reflection rather than an act prompted by emotional frenzy, panic, or a fit of rage; (2) the defendant had a careful plan or prearranged design to commit murder before the fatal incident; (3) the defendant exhibited heightened premeditation; and (4) the defendant had no pretense of moral or legal justification. The evidence in this case established that Buckner may have been angry with the victim for dancing with his girlfriend; that Buckner approached the victim's vehicle; that Buckner and the victim "tussled"; that shots were fired; and that Buckner walked away from vehicle but when the victim exited the vehicle and cried for help, Buckner returned, asked the victim if he'd had enough, and then shot him three more times. While, as stated above, we find this evidence to be sufficient to establish premeditation, we do not find it sufficient to establish "heightened" premeditation. Nor do we find sufficient evidence to support a finding that Buckner had a careful, prearranged plan to commit this murder. Contrary to the trial judge's finding in the sentencing order, no evidence existed to show that Buckner left the club and obtained a gun; in fact, the weapon was never found and it was unclear whether Buckner had the gun on his person, left to obtain it, or obtained it from the victim himself (as contended by Buckner). Moreover, as the trial judge stated in denying the motion for acquittal, the issue of premeditation in this case was "an extremely close call." This is especially true of the initial two shots. While we found above that Buckner's actions and statements between the first two shots and the final three shots were sufficient to establish premeditation, we do not find such evidence to be sufficient to establish the "heightened" premeditation necessary to establish CCP. See Nibert v. State, 508 So.2d 1 (Fla.1987) *390 (CCP requires finding of more contemplative, more methodical, more controlled intent to kill than that necessary to establish conviction).
The State cites numerous cases for the proposition that this murder was CCP; however, those cases are distinguishable in that they involved execution-style or contract murders. See, e.g., Bonifay v. State, 680 So.2d 413 (Fla.1996) (contract killing that took place over a period of days); Wuornos v. State, 644 So.2d 1000 (Fla.1994) (defendant armed herself in advance, lured victim to isolated location, and killed victim to steal his belongings); Walls v. State, 641 So.2d 381 (Fla.1994) (defendant broke into home, bound and gagged victims, then shot them in execution-type killing). We find this case to be more in line with those cases in which we have found the evidence insufficient to support CCP. See Hamilton v. State, 678 So.2d 1228 (Fla.1996) (no CCP because no proof of careful or prearranged design to kill); Pietri v. State, 644 So.2d 1347 (Fla.1994) (murder after police chase did not show heightened premeditation or careful plan or prearranged design necessary to establish CCP); Vining v. State, 637 So.2d 921 (Fla.1994) (although ample evidence to support simple premeditation, evidence insufficient to support heightened premeditation because no indicia of calculation).
Next, we address the factor of HAC. In order for the HAC aggravating circumstance to apply, the murder must be conscienceless or pitiless and unnecessarily torturous to the victim. Hartley v. State, 686 So.2d 1316 (Fla.1996), cert. denied, ___ U.S. ____, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997); Richardson v. State, 604 So.2d 1107 (Fla. 1992). Only when a murder evinces extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another is a finding of HAC appropriate. Cheshire v. State, 568 So.2d 908 (Fla.1990). In this case, the entire episode took only a few minutes and no evidence reflected that Buckner intended to subject the victim to any prolonged or torturous suffering. See, e.g., Hamilton v. State, 678 So.2d 1228 (Fla.1996) (fact that gun was reloaded does not, without more, establish intent to inflict high degree of pain or otherwise torture victims); Brown v. State, 526 So.2d 903 (Fla.1988) (no HAC where victim shot in arm, begged for life, then shot in head). Consequently, we conclude that the trial judge erred in finding the murder to be HAC.
In this case, the only two aggravating circumstances found by the trial judge were CCP and HAC. Having concluded that the instant murder was neither CCP nor HAC, we must vacate the death sentence and remand this case for imposition of a life sentence without possibility of parole. Elam v. State, 636 So.2d 1312 (Fla.1994); Thompson v. State, 565 So.2d 1311 (Fla.1990); Banda v. State, 536 So.2d 221 (Fla.1988).
Our finding that the death sentence is inappropriate in this case renders the other penalty phase issues moot.
Accordingly, for the reasons expressed, we affirm Buckner's convictions of shooting into an occupied conveyance and first-degree murder and his sentence for the shooting into an occupied conveyance conviction. We reverse his sentence of death for the first-degree murder conviction and remand this cause for imposition of a life sentence without possibility of parole.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
WELLS, J., concurs as to conviction and concurs in result only as to sentence.
NOTES
[1] In her testimony, Tasha denied dancing with the victim or engaging in any argument with Buckner.
[2] Although the testimony of the eyewitnesses (Reginald David and Garlinda Lewis) who presented most of these facts was fairly consistent, David's testimony differed from his initial statements to law enforcement officers, and he had pending misdemeanor charges at the time of trial. Lewis admitted she was dealing in drugs in the parking lot at the time of the murder, she had twentynine previous felony convictions, and her husband had two pending felony charges at the time of trial. Additionally, although Lewis was the only person who heard Buckner say, "You ain't had enough?", a number of witnesses saw Buckner shoot the victim.
[3] The trial judge found in mitigation: Buckner was under the influence of mental and emotional disturbance that was not extreme; age; capacity to appreciate criminality of his conduct impaired but not substantially so; and other aspects of his character (expressed remorse, poor student, artistic talent, and chaotic lifestyle).