PARIENTE, J.,
concurring in part and dissenting in part.
Although I concur as to the conviction, I dissent as to the majority’s conclusion that HAC applies to this shooting murder. Despite the majority’s attempt to distinguish Teffeteller v. State, 439 So.2d 840 (Fla.1983), our well-established precedent establishes that while there are other aggra *675 vating circumstances in this case, HAC is not established here.
HAC is shorthand for “especially heinous, atrocious and cruel.” § 921.141(5)(h), Fla. Stat. (2006) (emphasis added).[6] The HAC aggravator applies only to those “physically and mentally torturous murders which can be exemplified by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another.” Barnhill v. State, 834 So.2d 836, 849 (Fla.2002).
While the Court certainly should look to a victim’s mental state and viewpoint in determining the applicability of HAC, this Court has never held that HAC revolves solely around the victim’s perspective or the nature of the wound itself. In fact, we have explicitly rejected such a view and have long recognized that HAC can be applied only where the defendant himself desired to inflict a high degree of pain on another, was utterly indifferent to the suffering of another, or enjoyed the suffering of another. Guzman v. State, 721 So.2d 1155, 1159 (Fla.1998); see also Buckner v. State, 714 So.2d 384, 390 (Fla.1998) (“Only when a murder evinces extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another is a finding of HAC appropriate.”). In other words, the finding of HAC requires both elements: the murder must be torturous from the victim’s viewpoint, and there must be actual evidence that the defendant either intended to inflict a high degree of pain or was utterly indifferent to or enjoyed the suffering of another.[7]
Yet in its sentencing order, the trial court rejected the defendant’s argument that HAC did not apply because the evidence failed to demonstrate that Hall intended that the victim suffer a torturous death or was utterly indifferent to Blunt’s suffering. Instead, the court stated that to determine whether HAC applies, “Mr. Blunt’s perceptions are the controlling criteria.” That statement is incorrect. The victim’s perceptions, while important, are not the controlling fact in deciding whether HAC applies, and the trial court made a critical error that affected its finding of HAC.
The actions in this case involve a defendant who used an assault rifle to fire rapidly and indiscriminately throughout a crowded living room during a short robbery, showing the victims that he was serious. The initial, random shots hit some of the victims, who suffered various wounds, most of which were nonlethal. In addition, the shots blew out the television and light fixture, which left the living room dark. *676 When one of the victims, Evans, informed Hall that there was more money in a back bedroom, Hall left to find it. After his attempt to locate the money was unsuccessful, he returned to the living room, fatally shot Evans, and then immediately fled the scene along with the other men involved in the robbery. It was only after Hall left that Blunt was seen to be in pain and was heard to be groaning, repeatedly stating that he did not want to die.
The facts regarding Hall’s indiscriminate shooting in a crowded room clearly support the statutory aggravator that Hall “created a great risk of death to many people.” The fact that numerous individuals were shot, including Evans who was fatally shot in the head, support the contemporaneous violent felony aggravator. These facts alone, however, do not support HAC.
Both the trial court and the majority base the finding of HAC on two circumstances: (1) the pain that Blunt exhibited after the defendant left; and (2) that Blunt was aware other victims were shot. Without more, these circumstances do not establish HAC. Simply put, there is no evidence that was submitted by the State to show the second necessary element of HAC — that the defendant intended to cause or was utterly indifferent to the victim’s suffering. In this case, there is no additional act by the defendant evidencing his intent to mentally or physically torture Blunt beyond the initial rapid and indiscriminate gunfire, which resulted in Blunt’s injuries that eventually caused his death.
The majority first bases its determination of HAC on the assertion that Blunt was aware other victims were shot. While this Court has found HAC based on the shooting deaths of other victims, it was based on the fact that the victims clearly understood their impending deaths because they saw the other victims were being systematically eliminated. See, e.g., Allred v. State, 55 So.3d 1267, 1280 (Fla. 2010) (affirming HAC where evidence showed that after the defendant informed the victim that he would kill her, he broke into her home and started hunting for her, resulting in the victim calling 911 in a panic and relating to the 911 operator that she heard the defendant killing her best friend, she anticipated her own death and pleaded for assistance, and then she screamed as she was repeatedly shot), cert. denied, — U.S. -, 132 S.Ct. 181, 181 L.Ed.2d 91 (2011); Henderson v. State, 463 So.2d 196, 201 (Fla.1985) (affirming HAC where evidence showed that the defendant bound and gagged the victims and then systematically shot each one in the head, permitting the victims to see what was happening and to suffer extreme fear while they anticipated their fate). Here, this case does not involve a systematic elimination of witnesses where the other victims watched and understood that they would all soon die and faced the fear of their impending deaths. Thus, this fact does not support HAC. Moreover, there was no evidence presented that Blunt knew or saw the injuries that the other victims endured. In fact, the evidence presented at trial establishes that many of the witnesses found it difficult, if not impossible, to see what happened to each other since the crime occurred at night and the defendant’s initial shots blew out the lights in the room.
The majority also affirms the finding of HAC based on the pain that Blunt exhibited. However, these events happened after the defendant left. Thus, this evidence cannot establish that the defendant intended for the victim to suffer a torturous death or that he was utterly indifferent to the victim’s pain. No evidence was presented that Hall knew that Blunt contin *677 ued to suffer from this fatal gunshot wound. In fact, most of the surviving victims testified that it was after Hall left that they realized what injuries other victims had suffered.
In Barnhill, cited by the majority, we explained that “if a victim is killed in a torturous manner, a defendant need not have the intent or desire to inflict torture, because the very torturous manner of the victim’s death is evidence of a defendant’s indifference.” 834 So.2d at 850. Specifically, in Barnhill, we were discussing strangulation deaths and went on to explain that “[bjecause strangulation of a conscious victim involves foreknowledge and the extreme anxiety of impending death, death by strangulation constitutes prima facie evidence of HAC.” Id. Moreover, based on that fact that strangulation requires the defendant to apply extreme force to the victim’s neck for a substantial period of time before the victim dies, this manner of death inherently shows that the defendant was indifferent to the victim’s pain. In fact, Barnhill involved a defendant who strangled the victim repeatedly over a period of several minutes, after several failed attempts, and the victim did not lose consciousness immediately and attempted to fight back.
Unlike strangulations, shooting deaths have been considered in a different light with no inference of the defendant’s state of mind. This Court has previously recognized that “a murder by shooting, when it is ordinary in the sense that it is not set apart from the norm of premeditated murders, is as a matter of law not heinous, atrocious, or cruel.” Lewis v. State, 398 So.2d 432, 438 (Fla.1981); see Kearse v. State, 662 So.2d 677, 686 (Fla.1995). Thus, this Court has previously struck the finding of HAC in this type of case. For example, in Teffeteller, 439 So.2d at 846, this Court struck the HAC aggravator under similar circumstances, where the victim died a slow death after being shot. The gunshot was not immediately fatal, and the victim lived for a couple of hours in undoubted pain and knew that he was facing imminent death. Id. Regardless, this Court held that this circumstance, even though horrible, did “not set this senseless murder apart from the norm of capital felonies.” Id.
While the majority attempts to distinguish Teffeteller because here Blunt purportedly knew that other victims had been shot, as addressed above, this Court has used this circumstance to establish HAC only where the defendant’s action in systematically eliminating the witnesses led the victim to clearly understand his or her impending death. Such was not the case here. Moreover, since some of the witnesses testified they could not see what was happening because the lights went out, the facts do not establish that Blunt was aware of the other victims’ injuries. In addition, although the majority attempts to distinguish Teffeteller because Blunt made statements that showed he knew he was dying, this same circumstance was also present in Teffeteller. Further, such evidence is not relevant to whether Hall was “utterly indifferent” to Blunt’s suffering since those events occurred after Hall left, and no evidence was presented to show that Hall intended to shoot the victim in a manner that would cause a slow, painful death.
A review of our prior precedent in these types of cases shows that the Court has struck HAC in other shooting deaths where the facts did not establish that the defendant intended to inflict pain upon the victim or was utterly indifferent to the suffering of another. For example, in Buckner, 714 So.2d at 386, the defendant shot the victim twice and, after the victim stumbled out of the vehicle yelling for *678 help, the defendant walked back to the victim and shot him three more times. Even though evidence established that based on the victim’s injuries, the victim would have remained conscious for several minutes before he died, this Court held that the trial judge erred in finding HAC because no evidence was submitted that the defendant “intended to subject the victim to any prolonged or torturous suffering.” Id. at 390.
In another similar case, after the defendant shot a police officer in the arm, the officer begged for his life, and the defendant shot the victim twice more in the head. Brown v. State, 526 So.2d 903, 904-05, 907 (Fla.1988), abrogated on other grounds by Fenelon v. State, 594 So.2d 292 (Fla.1992). This Court struck the HAC aggravator, stating that “[t]he murder was not accompanied by additional acts setting it apart from the norm of capital felonies and the evidence disproved that it was committed so as to cause the victim unnecessary and prolonged suffering.” Id. at 907; see also Bonifay v. State, 626 So.2d 1310, 1313 (Fla.1993) (striking HAC aggra-vator and holding that “[t]he fact that the victim begged for his life or that there were multiple gunshots is an inadequate basis to find this aggravating factor absent evidence that [the defendant] intended to cause the victim unnecessary and prolonged suffering”); Robinson v. State, 574 So.2d 108, 111-12 (Fla.1991) (striking HAC where victim was shot twice and there was no evidence submitted that defendant intended to cause victim unnecessary suffering or that she labored under the apprehension' that she was to be murdered).
By continuing to expand HAC, the Court risks undermining the very principles that have kept Florida’s death penalty statutory scheme constitutional. The purpose of aggravating circumstances is to supply a “meaningful basis for distinguishing the few cases in which [death] is imposed from the many cases in which it is not.” Furman v. Georgia, 408 U.S. 238, 313, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (White, J., concurring). In order for our statutory scheme to continue to be constitutional, an aggravator cannot be expanded to such a degree that it could potentially apply to all first-degree murders. The HAC aggravator could easily be applied to all first-degree murders as killing in and of itself is atrocious and cruel. See Tedder, 322 So.2d at 910 (“It is apparent that all killings are atrocious.... ”).
To prevent such an expansion, this Court has long defined the HAC aggravator narrowly:
The aggravating circumstance which has been most frequently attacked is the provision that commission of an especially heinous, atrocious or cruel capital felony constitutes an aggravated capital felony. Fla. Stat. § 921.141(6)(h), F.S.A. ... It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies — the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
Dixon, 283 So.2d at 9 (emphasis added); see also Hernandez v. State, 4 So.3d 642, 668-69 (Fla.), cert. denied, — U.S. -, 130 S.Ct. 160, 175 L.Ed.2d 101 (2009). To date, we have adhered to that definition. However, now, the majority is expanding HAC beyond that which Dixon originally intended.
Accordingly, I would strike the HAC aggravator, which would leave three re *679 maining aggravators that were found to exist in relation to Evans’ murder (pecuniary gain, prior violent felony, and knowingly creating a great risk of harm to many people). This error cannot be considered harmless because when the jury considered the appropriate sentence for Evans’ murder, the jury recommended a life sentence, even though the jury found that the same three remaining aggravators applied to that murder.
For the reasons above, I dissent as to the sentence.
LABARGA, J., concurs.

. Many first-degree murders would initially appear heinous, atrocious, or cruel. See Amoros v. State, 531 So.2d 1256, 1260 (Fla.1988) ("First-degree murder is a heinous crime; however, this statutory aggravating circumstance requires the incident to be 'especially heinous, atrocious, [or] cruel.’ ”); Tedder v. State, 322 So.2d 908, 910 (Fla.1975) ("It is apparent that all killings are atrocious .... Still, we believe that the Legislature intended something 'especially' heinous, atrocious or cruel when it authorized the death penalty for first degree murder.”).

. The manner in which a victim is killed can be evidence that the defendant is indifferent to the victim’s suffering. See Barnhill, 834 So.2d at 850 ("[I]f a victim is killed in a torturous manner, a defendant need not have the intent or desire to inflict torture, because the very torturous manner of the victim’s death is evidence of a defendant's indifference.”). However, this does not mean that intent or indifference is no longer required. That would be contrary to the very definition of HAC, which requires that the defendant acted in a manner "designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others.” State v. Dixon, 283 So.2d 1, 9 (Fla.1973).