SALTER, J.
Alexeis Ramayo appeals from a judgment of conviction and sentence following a jury trial. He was convicted of sexually molesting his three-year-old niece, S.N.R., in the absence of any physical evidence and in the absence of any eyewitness testimony (other than the child’s videotaped interview). The jury returned a verdict of not guilty as to sexual battery on a child under 12, but guilty of battery as a lesser included offense of sexual battery, and a verdict of guilty on separate counts of lewd and lascivious exhibition and molestation. We reverse and remand for a new trial on the three counts as to which the jury found Mr. Ramayo guilty, concluding that the testimony of a pediatrician (who made no physical findings of abuse but diagnosed the case as one of “sexual abuse by history”) impermissibly bolstered S.N.R.’s statements.
*1225 I. Proceedings in the Circuit Court
The evidence adduced both before and at trial was sharply conflicting. There was no DNA or other forensic evidence to prove or disprove guilt. Mr. Ramayo’s wife, from whom he was separated well before the alleged incident, and her sister (S.N.R.’s mother), freely admitted that they had a poor relationship with Mr. Ra-mayo before the alleged incident occurred. At the time of the investigation,[1] and later upon remote video testimony observed by the jury, S.N.R. gave inconsistent accounts of what happened and dubious answers to questions designed to determine whether she knew the difference between true and false, and between right and wrong. When interviewed by an expert psychologist before trial, S.N.R. initially denied that anyone had touched her private parts or had seen anyone else’s private parts. After an assistant state attorney had a private discussion with the child, S.N.R. was crying, and she then told the psychologist that yes, Mr. Ramayo had done those things. The psychologist testified that she asked the child why she was crying, and S.N.R. said, “the other lady tricked me.”
The case proceeded to trial. During jury selection, the prosecutor intimated that the jury might wonder how there might be police reports that would not be introduced into evidence. After a defense objection, the trial judge sustained the objection and gave the venire a curative instruction. The trial judge denied a defense motion for a mistrial based on the prosecutor’s statement.
Of greater significance, the State offered (over repeated objection) expert testimony by Dr. Walter Lambert, a physician specializing in pediatrics. Dr. Lambert testified that he is a pediatrician at the University of Miami and a medical director for the Child Protection Team for Miami-Dade and Monroe Counties. A 1985 graduate of the University of Miami School of Medicine, Dr. Lambert testified that he is an associate professor of clinical pediatrics at U.M.’s medical school. He is a Florida board-certified pediatrician with a subspe-cialty in child abuse, but not a psychologist.
Dr. Lambert described the Child Protection Team as a “group of people independent of the Department of Children and Families, independent of law enforcement, of the State Attorney’s office to look at [child abuse] cases that are reported as suspicious.” He described the team’s job as “to say if it’s true, if it’s not true, or we can’t tell.” He said the Team is multidisciplinary, including social workers and psychologists as well as physicians. Most of his work, he said, “is going to involve allegations of inflicted injuries, problems with nutrition, failure to thrive, and allegations of sexual abuse.” He testified that he has conducted such investigations since 1988. He estimated that he has conducted about 5,000 evaluations with the Child Protection Team over that period.
Dr. Lambert testified that he teaches at the Medical School and lectures “fairly extensively across the United States and South America, occasionally other places.” Over a renewed defense objection (relating to the nature of, and basis for, his opinion in the case, and not to his impeccable credentials as a pediatrician), Dr. Lambert was accepted by the trial court as an expert witness in “pediatric child maltreatment and sexual abuse.”
During the continued direct examination, Dr. Lambert described the guidelines *1226 for his investigations with the Child Protective Team and the difference between an “acute” case (child patient presenting with pain, visible signs of injury, or physical evidence susceptible to forensic analysis) and a case (as here) that is past that stage. Dr. Lambert examined S.N.R. when she was approximately three years and ten months old. The examination took place sixteen days after the alleged incidents. Dr. Lambert’s testimony and contemporaneous written report (admitted into evidence) found no bruises or lesions; and no discharge, rash, or other lesions in the area of her genitalia and rectum. Dr. Lambert testified that “She had a completely normal exam. She would have an exam like that if she had walked into my office and I was her regular pediatrician that I would have expected.” But based on S.N.R.’s statements, Dr. Lambert rendered an opinion that “this case represents sexual abuse by history.”
On cross-examination, Dr. Lambert explained that “history” meant “the history the person provided when they presented themselves,” as well as reports by others (in the present case, this was the State’s forensic investigator who had interviewed the mother and S.N.R. the same day Dr. Lambert examined S.N.R.).
Mr. Ramayo testified that he had not committed any of the alleged acts, and that S.N.R.’s mother (his sister-in-law) had a very bad relationship with him. He testified that he was separated from his wife (the sister of S.N.R.’s mother). The defense emphasized that Mr. Ramayo’s wife and sister-in-law were upset with him over an IRS refund check that they did not want to share with him, and Mr. Ramayo contended that the alleged crimes could not likely have been committed in a one-bedroom apartment with nine persons in it.
As noted, the jury returned guilty verdicts on two of the four counts, a guilty verdict on a lesser included offense as to a third count, and a verdict of not guilty on the charge of sexual battery on a victim under 12. This appeal followed.
II. Analysis — Bolstering
Dr. Lambert’s qualifications, experience, and good faith are not questioned by the parties or the Court. Mr. Ramayo’s legal argument, instead, is that Dr. Lambert’s expertise, credentials, and articulate testimony may have so bolstered the child’s testimony as to announce guilt before the jury heard all the evidence and considered the case. Dr. Lambert’s testimony that there were no physical findings during his examination of S.N.R. supporting an allegation of sexual abuse was proper. It was also proper for him to opine that the absence of physical findings does not necessarily disprove the allegation of sexual abuse, particularly given the sixteen-day interval between the alleged incident and Dr. Lambert’s physical examination of S.N.R.
What Dr. Lambert could not do, however, was to opine directly on S.N.R.’s credibility or otherwise vouch for her truthfulness. Geissler v. State, 90 So.3d 941 (Fla. 2d DCA 2012). In Geissler, the allegations of child sexual abuse were related by a seven-year-old. The child was examined by an advanced registered nurse practitioner and medical examiner with the New Port Richey office of the regional Child Protection Team. The nurse practitioner “has a master’s degree in child health and has conducted thousands of examinations for child sexual abuse during her nine years with CPT.” Id. at 946. As here, the physical examination of the child “disclosed no physical findings supporting the allegation that sexual abuse had occurred.” Id. at 947. The nurse practition *1227 er testified that many types of sexual abuse do not leave physical findings in an exam, and that the case appeared to be one of “sexual abuse without physical findings on the exam.”
On appeal, the Second District reversed Mr. Geissler’s conviction and remanded the case for a new trial:
As a general rule, “it is not proper to allow an expert to vouch for the truthfulness or credibility of a witness.” Frances v. State, 970 So.2d 806, 814 (Fla.2007) (citing Feller v. State, 637 So.2d 911, 915 (Fla.1994), and State v. Townsend, 635 So.2d 949, 958 (Fla.1994)). The general rule applies to prohibit an expert witness from testifying concerning the truthfulness or credibility of the victim in child sexual abuse cases. Tingle v. State, 536 So.2d 202, 205 (Fla.1988); Weatherford v. State, 561 So.2d 629, 634 (Fla. 1st DCA 1990). Of course, a nurse practitioner such as Ms. Nadkarni may testify to the physical findings observed on examination of a child victim. See State v. Gerry, 855 So.2d 157, 160 (Fla. 5th DCA 2003). It is also proper for such a nurse practitioner to explain why, given the nature of the abuse alleged, physical injury may not be observed on examination. Id.
Even if the expert does not comment directly on the child victim’s credibility, expert testimony is improper if the juxtaposition of the questions propounded to the expert gives the jury the clear impression that the expert believed that the child victim was telling the truth. Hitchcock v. State, 636 So.2d 572, 575 (Fla. 4th DCA 1994); Price v. State, 627 So.2d 64, 66 (Fla. 5th DCA 1993). Here, Ms. Nadkarni did not opine directly on [the child’s] credibility. Nevertheless, Ms. Nadkarni’s testimony concerning her “medical assessment” that sexual abuse had occurred was based entirely on the history of sexual abuse reported by the child. This testimony left the jury with the unmistakable impression that Ms. Nadkarni’s opinion — supported as it was by her impressive credentials — was that [the child’s] account of the sexual abuse was truthful. The admission of this opinion testimony — especially in a case where the child has testified that she fabricated her story about the sexual abuse for an ulterior motive — was error. See Feller v. State, 637 So.2d 911, 915 (Fla.1994).

Id.

In the present case, as in Geissler, we cannot conclude that the admission of Dr. Lambert’s testimony and written examination report regarding a diagnosis of sexual abuse was harmless error. The State has not met its burden to show beyond a reasonable doubt that the improper bolstering of S.N.R.’s video testimony did not contribute to the jury’s verdict. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Our conclusion on this issue also finds support in appellate decisions from at least four other states. See Michigan v. Harris, 2012 WL 2946100 (Mich.App. July 19, 2012) (stating that a medical expert’s opinion based on the history of the victim, not on the expert’s expertise, is inadmissible as being nothing more than an opinion that victim is truthful); Oregon v. Southard, 347 Or. 127, 218 P.3d 104 (2009) (finding that a medical diagnosis of sexual abuse is not admissible in the absence of physical evidence because the methodology used to reach that diagnosis is largely dependent on an implicit credibility assessment, making the risk of prejudice greater than its probative value, particularly where the expert does not tell the jury anything it could not determine on its own); Ohio v. Winterich, 2008 WL 1747433 (Ohio App. 2008) (finding inadmissible the testimony of a doctor who based her abuse diagnosis *1228 only on the alleged victim’s statement, as this was improper bolstering of victim’s allegations); Rhode Island v. Castore, 435 A.2d 321, 326 (R.I.1981) (rejecting admissibility of expert testimony where opinion “was based, not upon his examination of [the alleged victim] or upon laboratory tests, but solely on what [the alleged victim] had related to him about what went on”).
III. Conclusion
We have carefully considered the remaining arguments raised by Mr. Ra-mayo and find them moot, lacking merit, or both. We do not find that Dr. Lambert’s testimony and opinion regarding a diagnosis of “sexual abuse by history” in this case warranted a Frye[2] test, because of our conclusion that his expert opinion was impermissible bolstering and thus inadmissible. Nor do we find that the trial court abused its discretion in denying a defense motion for mistrial based on the prosecutor’s comments about possible police reports. The trial judge sustained the defense objection and promptly issued a curative instruction to the jury. Joseph v. State, 704 So.2d 1149 (Fla. 3d DCA 1998).
For all these reasons, we reverse the judgment of conviction and sentence below, and we remand the case for a new trial.

. The alleged sexual abuse occurred on June 5, 2010; the first report to the North Miami Police was made by S.N.R.’s mother on June 11, 2010; and the medical examination was on June 21, 2010.

. Frye v. United States, 293 F. 1013 (D.C.Cir.1923). The State made no attempt to proffer or establish any medical literature or consensus regarding a diagnosis of "sexual abuse by history” in reliance on statements by an alleged child victim in the absence of physical or forensic evidence.